UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| ALIVIA BLOUNT, | |
| Plaintiff, | |
| | Case No. 3:23-cv-00343 |
| v. | |
| | Judge Waverly D. Crenshaw, Jr. |
| WHOLE FOODS MARKET DOWNTOWN NASHVILLE, | Magistrate Judge Alistair E. Newbern |
| Defendant. | |

To:     The Honorable Waverly D. Crenshaw, Jr., District Judge

**REPORT AND RECOMMENDATION**

Pro se Plaintiff Alivia Blount brings this action under 42 U.S.C. § 1981 alleging that Defendant Whole Foods Market Downtown Nashville (Whole Foods) discriminated against her based on her race when a security guard falsely accused her of stealing a reusable cup and an employee asked Blount to leave the store to resolve the interaction. (Doc. No. 13.)

The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 11.) Whole Foods and Blount have filed cross-motions for summary judgment under Federal Rule of Civil Procedure 56. (Doc. Nos. 120, 125.) Whole Foods has also moved to strike Blount's second summary judgment reply. (Doc. No. 154.) Having considered the parties' arguments and the summary judgment record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that the Court deny both motions for summary judgment and Whole Foods' motion to strike.

# I.    Background

## A.    Factual Background

Blount identifies her race as Black (Doc. No. 123-2) or African American (Doc. No. 134). On the morning of March 13, 2023, Blount entered Whole Foods holding a reusable cup she had previously purchased at that store. (Doc. Nos. 133, 134.) Blount filled the cup with acai using the store's self-serve acai machine. (Doc. Nos. 123-2, 133, 134.) Whole Foods states that its self-serve acai is priced by weight and that the ordinary procedure for purchasing it is for a customer to obtain a disposable cup that Whole Foods provides, dispense acai into the disposable cup, weigh the acai and disposable cup to determine the price, and pay. (Doc. Nos. 123-4, 133.)

After dispensing acai into her personal reusable cup, Blount walked around the store. (Doc. No. 123-2.) Blount states that her parents frequently sent her funds electronically to pay for breakfast and that she was waiting for her mother to do so. Foods. (*Id.*) Blount states that she did not eat the acai while she walked in the store. (*Id.*)

A security guard approached Blount in a store aisle. (Doc. Nos. 123-2, 123-3.) Whole Foods identifies the security guard as Abdullah Al-Marof and states that Al-Marof was employed by a third-party security contractor. (Doc. No. 123-3.) Blount states that Al-Marof told her that he saw her steal the reusable cup off of a shelf in the store and demanded that she give the cup to him. (Doc. No. 123-2.) Whole Foods states that Al-Marof approached Blount "to inform [Blount] that she needed to weigh the smoothie and make payment before consumption." (Doc. No. 123-3, PageID# 699.) Blount states that Al-Marof "accused [her] of stealing the mug not the acai" and "never asked [her] to purchase anything." (Doc. No. 123-2, PageID# 680, 681.) There is no dispute that Blount and Al-Marof argued. (Doc. Nos. 123-2, 123-3.)

Whole Foods states that store team leader Joe Rudat "was called to intervene in a potential shoplifting incident" and "was informed that [Blount] had not paid for her smoothie before

consuming it, and [that] she had gotten upset by her interaction with [ ] Al-[M]arof." (Doc. No. 123-3, PageID# 703.) Rudat approached Blount and Al-Marof and spoke to them. (Doc. Nos. 123-2–123-4.) There is no dispute that Rudat directed Al-Marof to return Blount's reusable cup to her. (Doc. Nos. 123-2, 132.) Rudat then "asked [Blount] to leave the store to close the encounter." (Doc. No. 123-2, PageID# 684–85.) Blount states that she asked Rudat "what [she] should do about the acai in the cup[,] and [he] said [Blount] should pour it out and leave the store." (*Id.* at PageID# 683.) There is no dispute that Blount poured out the acai and left the store with her cup. (Doc. Nos. 123-2, 133, 134.)

Al-Marof wrote his account of the interaction with Blount in a note on his cell phone.[1] (Doc. Nos. 123-4, 125-1.) The note reads:

---

[1]      Whole Foods produced Al-Marof's note to Blount in response to her requests for production. (Doc. No. 123-3.) But Whole Foods argues that Blount may not rely on this evidence at summary judgment because it "is not authenticated under Fed. R. Evid. 901, and is therefore inadmissible" and "is also inadmissible hearsay pursuant to Fed. R. Evid. 801 because it is a statement from a third-party." (Doc. No. 130, PageID# 761.) Whole Foods' arguments ignore "the 2010 amendments to Rule 56, which eliminated the unequivocal requirement that documents submitted in support of [or in opposition to] a summary judgment motion must be authenticated." *Foreword Mag., Inc. v. OverDrive, Inc.*, No. 1:10-cv-1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011); *see also Ganesh v. United States*, 658 F. App'x 217, 220 (6th Cir. 2016) (holding that "the amended rule 'omit[s] as unnecessary' '[t]he requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration'" (alterations in original) (quoting Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment)). The amended version of Rule 56(c)(2) instead "permits a party to 'object that the material cited to support or dispute a fact *cannot be presented in a form that would be admissible in evidence.*'" *Ganesh*, 658 F. App'x at 220 (quoting Fed. R. Civ. P. 56(c)(2)); *see also Swank v. Hale*, No. 2:12-cv-1031, 2016 WL 1156517, at *2–4 (S.D. Ohio Mar. 24, 2016) ("Rule 56 (as amended) replaces the authentication standard and permits courts to consider unauthenticated materials, while providing an adverse party the opportunity to object to material that the party believes 'cannot be presented in a form that would be admissible in evidence.' (quoting Fed. R. Civ. P. 56(c)(2))). "Significantly, the objection contemplated by the amended Rule is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be." *Foreword Mag., Inc.*, 2011 WL 5169384, at *2; *see also* 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.91[2] (3d ed. 2025) ("The requirement is that the party submitting the evidence show that it will be possible to put the information, the substance or content of the evidence, into an admissible form.").

March 13 –

African American female, approximately 25 years of age, known to engage in a recurring self-checkout scam with her family, visited the store unaccompanied and began wandering through the aisles while singing loudly. Subsequently, she alerted a team member, creating a scene and requesting the security officer (myself) to inspect the women's public restroom due to an alleged presence of a "naked woman running around." Upon inspection, the restroom was found to be unoccupied, and statements from witnesses did not support the claim of a naked woman.

I maintained close surveillance of the woman due to her increasingly peculiar behavior. She continued singing loudly and making customers uncomfortable. Notably, she used the Smoothie machine to fill her personal cup, took it to the cafe without payment, and consumed the smoothie for approximately 15 minutes. A team member advised me to approach her, as the smoothies are sold by weight, and she had not paid before consumption.

I confronted the individual and informed her that she needed to weigh the smoothie at the register and make payment before consumption. In response, she began to shout, accused me of racism, and ridiculed my appearance. Her continued outbursts caused significant discomfort to other customers. After several minutes of attempting to defuse the situation, I informed her that she would have to leave the store unless she calmed down. She requested a manager, and I radioed for Joe to intervene. Joe successfully diffused the situation, and the woman retrieved her cup from the cafe before exiting the store.

(Doc. No. 125-1, PageID# 739.)

Blount denies singing loudly or telling a Whole Foods team member that there was a naked woman in the bathroom and asserts that Al-Marof incorrectly "linked her to another Black woman's conduct." (Doc. No. 134, PageID# 969.) Whole Foods agrees that "Al-Marof's notes demonstrate that he mistook [Blount] for a different person" (Doc. No. 130, PageID# 761). Whole Foods also states that "Al-[M]arof does not recall which team member [he believed Blount told

---

Whole Foods has not argued that the content of Al-Marof's note cannot be presented in a form admissible at trial. Al-Marof "has personal knowledge of the relevant substance of the statement[s]" in his note, and Whole Foods has not argued that Al-Marof is not "expected to be available to testify at trial[.]" 11 Moore et al., *Moore's Federal Practice* § 56.91[2]. "Therefore, [the note] may be relied on by either party at the summary judgment stage even though, at th[is] point, it is not in an admissible form." *Id.*

about the naked woman] and none of the team members scheduled during [that] day recall this interaction with [ ] Blount." (Doc. No. 123-3, PageID# 699.)

**B.      Procedural History**

Blount initiated this action on April 13, 2023, by filing a complaint against Whole Foods alleging racial discrimination. (Doc. No. 1.) The Court granted Blount's application for leave to appear *in forma pauperis* (Doc. Nos. 5, 7), consolidated this action with another action Blount filed against Whole Foods (Doc. No. 9), and ordered Blount to file "one [a]mended [c]omplaint that identifies all of [her] legal claims and includes factual allegations sufficient to demonstrate a plausible right to relief" within thirty days of the Court's order (*id.* at PageID# 36). Three days later, Blount filed a motion requesting access to the Court's CM/ECF electronic filing system (Doc. No. 10) and attached an "updated complaint" against Whole Foods (*id.* at PageID# 41).

The Court treated Blount's updated complaint (Doc. No. 10) as the ordered amended pleading and, on November 2, 2023, screened Blount's amended complaint under 28 U.S.C. § 1915(e)(2)(B). (Doc. No. 11.) The Court found "that Blount has stated a non-frivolous Section 1981 claim for discrimination by a retail establishment" because she "ha[d] plausibly alleged that she is a member of a protected class; she sought to purchase goods ordinarily provided by Whole Foods; and she was deprived of her right to purchase those goods in a hostile manner that a reasonable person could find discriminatory." (*Id.* at PageID# 49.) The Court dismissed all other claims in Blount's complaint. (Doc. No. 11.)

Blount filed a motion for summary judgment on February 21, 2025, arguing that Whole Foods discriminated against her in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, and that she is entitled to judgment as a matter of law. (Doc. No. 63.) Whole Foods filed its own motion for summary judgment on March 31, 2025 (Doc. No. 74), arguing that Blount

cannot show she is entitled to monetary relief under § 2000a (Doc. No. 74-1). Neither party addressed Section 1981, under which the Court had found Blount stated a viable claim for relief.

In a July 22, 2025 order, the Court found that the parties' summary judgment motions were not "relevant to resolving Blount's § 1981 claim and . . . [were] rendered moot by the Court's final screening order" which allowed Blount's § 1981 claim to proceed and dismissed all other claims. (Doc. No. 118, PageID# 563.) The Court therefore "administratively terminate[d] the parties' summary judgment motions, related motions, and other motions rooted in the mistaken assertion that Blount is pursuing a claim under § 2000a" and "allow[ed] the parties an opportunity to refile dispositive motions addressing the operative § 1981 claim." (*Id.* at PageID# 564.) The Court ordered that "Blount and Whole Foods may refile dispositive motions addressing Blount's § 1981 claim by August 6, 2025." (*Id.* at PageID# 569.)

On August 6, 2025, Whole Foods filed a motion for summary judgment (Doc. No. 120) supported by a memorandum of law (Doc. No. 121), a statement of undisputed facts (Doc. No. 122), and exhibits (Doc. No. 120-1).[2] Blount filed a response in opposition to Whole Foods' summary judgment motion (Doc. No. 124), and Whole Foods filed a reply (Doc. No. 130).

On August 8, 2025, Blount filed a motion for summary judgment (Doc. No. 125) and attached exhibits (Doc. No. 125-1). Whole Foods responded in opposition to Blount's motion (Doc. No. 131), and Blount filed a reply (Doc. No. 135) with an attached declaration (Doc. No. 135-1). Blount also filed a "[n]otice to preserve issues for appeal and to clarify mischaracterizations of the record" (Doc. No. 136, PageID# 976), and a filing docketed as a brief arguing that "Whole Foods has a documented history, in multiple jurisdictions, of mistreating

---

[2]     At the Clerk of Court's direction, Whole Foods refiled its summary judgment exhibits on August 7, 2025. (Doc. Nos. 123, 123-1–123-4.)

Black employees and customers and of failing to address racial discrimination" (Doc. No. 137, PageID# 979). Whole Foods filed a response to these and other filings by Blount (Doc. No. 152), and Blount filed another reply in support of her motion for summary judgment (Doc. No. 153). Whole Foods moved to strike Blount's reply. (Doc. No. 154.)

## II.        Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

Where the parties file cross-motions for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

## III.    Analysis

### A.    Local Rule 56.01(g) and the Moving Parties' Initial Burdens Under Federal Rule of Civil Procedure 56

This Court's Local Rule 56.01 provides that a summary judgment movant "must file a concise, non-argumentative statement of the alleged undisputed material facts (not legal conclusions, arguments, or characterizations) that the movant contends supports summary judgment." M.D. Tenn. R. 56.01(c)(1) (statement of undisputed material facts). Under this rule, "[e]ach individual material fact must be numbered separately and must be supported by a citation to materials permitted by Fed R. Civ. P. 56(c)(1)." M.D. Tenn. R. 56.01(c)(2). Any party opposing

8

a motion for summary judgment must specifically respond to each asserted fact by: "(A) agreeing that the fact is undisputed; (B) agreeing that the fact is undisputed for purposes of summary judgment only; or, (C) disputing the fact on any basis permitted by Fed. R. Civ. P. 56(c)." M.D. Tenn. R. 56.01(e)(1) (response to statement of facts). "If the respondent disputes a fact, the evidentiary citations supporting the respondent's position must be limited to evidence specific to that particular fact." M.D. Tenn. R. 56.01(e)(3). Local Rule 56.01(g) provides that, "[i]f a timely response to a moving party's statement of material facts is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment." M.D. Tenn. R. 56.01(g) (failure to respond). Pro se parties are not excused from complying with these rules. M.D. Tenn. R. 56.01(h) (cases with pro se parties). Indeed, the Court's scheduling order in this action instructed the parties to "refer to Federal Rule of Civil Procedure 56 and Local Rule 56.01 for summary judgment procedures[,]" described Local Rule 56.01's requirements, and warned the parties that "[f]ailure to respond in opposition to a statement of material fact may result in the Court assuming that the fact is true for purposes of summary judgment." (Doc. No. 49, PageID# 156).

Whole Foods filed a statement of undisputed material facts (Doc. No. 122) that cites Blount's verified amended complaint (Doc. No. 123-1), Blount's responses to Whole Foods' requests for admission (Doc. No. 123-2), and Whole Foods' responses to Blount's interrogatories (Doc. Nos. 123-3, 123-4). Blount did not file a response to Whole Foods' statement of undisputed material facts.

Blount also did not file a separate statement of undisputed material facts in support of her motion for summary judgment, but her summary judgment motion includes a list of asserted undisputed facts citing the parties' responses to requests for admissions and interrogatories and

other documents in the summary judgment record. (Doc. No. 125.) Whole Foods filed a response to this list of asserted undisputed facts (Doc. No. 132) and filed a statement of additional material facts (Doc. No. 133) to which Blount filed a response (Doc. No. 134).

The Court will consider the sufficiency of the parties' statements of undisputed material facts and responses in evaluating the parties' cross-motions for summary judgment. If the Court determines that an opposing party has not adequately responded to a properly asserted and supported fact, the Court must consider the asserted fact to be true for purposes of summary judgment. M.D. Tenn. R. 56.01(g). However, regardless of whether or how the opposing party responded to an assertion of fact, the moving parties must still carry their initial burdens to show the absence of any genuine dispute of material fact. *See Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) ("[A] party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact . . . regardless if an adverse party fails to respond."); *Felix v. Young*, 536 F.2d 1126, 1135 (6th Cir. 1976) ("[T]he fact that the movant's affidavits are uncontroverted does not necessarily mean that summary judgment should be granted[;] the ultimate burden of proving the propriety of summary judgment remains on the moving party.").

"Rule 56 first imposes a burden of production on the moving party to make a prima facie showing that it is entitled to summary judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. suppl. Sep. 2025). "In this context, a 'prima facie' showing means that, in the absence of evidence to the contrary, the movant's evidence is sufficient to entitle the movant to summary judgment." 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.40[1][a] (2025). Courts must view the movant's evidence in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) ("[T]he

moving party . . . ha[s] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."). If the moving party's evidence is insufficient, "'[n]o defense . . . is required'" and summary judgment must be denied. *Id.* at 161 (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 56.22(2) (2d ed. 1966)); *see also* 10A Wright & Miller, *Federal Practice and Procedure* § 2727.1 ("[I]f the movant bears the burden of proof on a claim at trial . . . [and] fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.").

The Court must therefore examine the evidence that the moving parties offer in support of their motions to determine if it is sufficient to satisfy their initial summary judgment burden with respect to Blount's § 1981 claim before evaluating the nonmovants' responses in opposition. *See Adickes*, 398 U.S. at 160 ("'[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.'" (quoting Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment)). Rule 56(c)(3) provides that the Court "need consider only" materials cited by the parties in their summary judgment briefing, "but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see also* Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment ("[A] court may consider record materials not called to its attention by the parties.").

### B. Blount's § 1981 Claim

Section 1981 prohibits "intentional race discrimination in the making and enforcing of contracts involving both public and private actors." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). "The statute's protection extends to 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001)

11

(quoting 42 U.S.C. § 1981(b)). Claims brought under § 1981 most often arise in the employment context, but courts in this circuit have also applied § 1981 to claims of discrimination by retail or service establishments. *See id.*; *see also Gant v. Walmart*, No. 3:12-cv-581, 2012 WL 2344637, at *2 (M.D. Tenn. June 20, 2012) (citing *id.*); *Harrington v. Marathon Petroleum Corp.*, Case No. 2:20-cv-16, 2020 WL 419435, at *2 (S.D. Ohio Jan. 27, 2020), *report and recommendation adopted sub nom. Harrington v. Marathon Petroleum Corp., Speedway, LLC*, No. 2:20-cv-16, 2020 WL 635771 (S.D. Ohio Feb. 11, 2020).

A plaintiff bringing a § 1981 claim may prove the claim with direct evidence or circumstantial evidence of discrimination. *Christian*, 252 F.3d at 869; *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). "Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful [discrimination] was a motivating factor in the [defendant's] action." *Jefferson v. Fresenius Med. Care Holdings, Inc.*, Case No. 3:22-cv-00862, 2025 WL 496463, at *5 (M.D. Tenn. Feb. 13, 2025) (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543–44 (6th Cir. 2008)), *report and recommendation adopted*, 2025 WL 764636 (M.D. Tenn. Mar. 11, 2025); *see also Gray v. AutoZoners LLC*, Civ. Action No. 20-CV-12261, 2022 WL 36419, at *5 (E.D. Mich. Jan. 4, 2022) (finding plaintiff "lack[ed] direct evidence that discrimination motivated defendants' actions" where evidence presented "d[id] not, without inference, lead to the conclusion that defendants were denying plaintiff services based on his race"). Circumstantial evidence is evidence that "does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir.2003).

"[T]o prevail in a claim of race discrimination under § 1981 relying on circumstantial evidence, a plaintiff must meet the burden-shifting standard of proof for Title VII cases established

by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981)." *Christian*, 252 F.3d at 868. Under this familiar standard,

> a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. To prevail, the plaintiff must then prove by a preponderance of the evidence that the defendant's proffered reason is not its true reason but a pretext for discrimination.

*Id.*

### 1.    Whole Foods' Summary Judgment Motion

Whole Foods argues that it is entitled to summary judgment on Blount's § 1981 claim as a matter of law because Blount "has proffered no admissible evidence to establish a prima facie case" of discrimination, "the prevention of suspected shoplifting is a legitimate, nondiscriminatory reason for [Whole Foods'] actions[,]" and Blount "cannot establish that the prevention of shoplifting is pretext for discrimination." (Doc. No. 121, PageID# 629.)

### a.    Establishing a Prima Facie Case Under § 1981

The Sixth Circuit has held that, to establish a prima facie case of discrimination under § 1981 in a commercial establishment case, a plaintiff must prove that:

> (1) plaintiff is a member of a protected class;

> (2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and

> (3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Christian*, 252 F.3d at 872. Whole Foods concedes that Blount satisfies the first prong because she is a member of a protected class. (Doc. No. 121.) Whole Foods argues, however, that there is no genuine dispute of material fact that Blount cannot establish the second or third prongs. (*Id.*)

With respect to the second prong, Whole Foods argues that Blount cannot establish that she sought to make or enforce a contract for services because (1) she was waiting for her parents to transfer funds electronically and, thus, lacked the means to complete her purchase or (2) she chose not to use other means she had to pay. (*Id.*) Whole Foods relies on *Christian* to support this argument. (*Id.*) The *Christian* plaintiffs were two friends shopping for Christmas presents in the defendant store's toy department. 252 F.3d at 864–65. Christian was Black, and her friend was white. *Id.* at 864. Both women were walking around the store, selecting merchandise, and placing it in a shared cart. *Id.* at 865. A store employee accused Christian of shoplifting and, eventually, police arrived and asked both plaintiffs to leave the store. *Id.* at 865–66. In determining whether the plaintiffs had established the second element of a prima facie § 1981 claim, the Sixth Circuit had "no trouble concluding that Christian made herself available to enter into a contractual relationship for services ordinarily provided by [the defendant]" because "the record reflect[ed] that she had selected merchandise to purchase, had the means to complete the transaction, and would, in fact, have completed her purchase had she not been asked to leave the store." *Id.* at 874. The *Christian* court did not specify what record evidence supported its finding that Christian had the means to complete her purchase in that case. *Id*.

Whole Foods argues that Blount's "testimony as to her lack of funds for breakfast does not support the requirement . . . that she had the 'means' to complete a transaction when she was asked to leave the store." (Doc. No. 121, PageID# 637.) Whole Foods cites two of its asserted undisputed material facts in support of this argument (*id.* (citing Doc. No. 122, ¶¶ 23, 24))—that Blount "did

Case 3:23-cv-00343    Document 155    Filed 10/31/25    Page 14 of 24 PageID #: 1087

not have the money she intended to use to pay for the acai in her cup" (Doc. No. 122, PageID# 656, ¶ 23 (citing Doc. No. 123-2)) and that Blount "chose not to use the funds she had available to purchase the acai in her cup" (*id.* at PageID# 657, ¶ 24 (citing Doc. No. 123-2)). Whole Foods cites Blount's response to its second request for admissions to support these asserted facts, in which Blount states that, when Al-Marof "approached [Blount] in an aisle of the store[,] . . . [she] did have money but not the funds [she] intended to use for breakfast" (Doc. No. 123-2, PageID# 680–81). The undisputed record evidence shows that Blount "did have money" when Al-Marof approached her and Rudat asked her to leave the store, that Blount's parents "frequently" "would send [her] funds electronically for breakfast[,]" that she had "messaged [her] mom and was in the process of receiving breakfast funds," and that "[t]ypically [her] parents wire[d] money quickly[.]" (*Id.* at PageID# 280, 681, 689.) This evidence, construed in the light most favorable to Blount, could support a reasonable jury finding that Blount had the means to complete her acai purchase when Rudat asked her to leave the store.

Whole Foods argues in the alternative that, even if Blount did have money to complete her purchase, "her decision to not use those funds to purchase the acai shows she voluntarily withdrew from any attempt to make or enforce a contract." (Doc. No. 121, PageID# 637.) Whole Foods relies on the Seventh Circuit's opinion in *Bagley v. Ameritech Corp.*, 220 F.3d 518 (7th Cir. 2000), to support this argument. In *Bagley*, the plaintiff entered an electronics store intending to purchase a cordless phone he had seen advertised. 220 F.3d at 519–20. The store "ke[pt] its phones in the back," so the plaintiff "walked over to a sales clerk and asked if the phone was still in stock." *Id.* at 519. The clerk turned to ask the assistant sales manager about the phone. *Id.* at 519–20. The assistant sales manager had met the plaintiff before in a different retail setting, and she had a strained relationship with him. *Id.* at 519. In response to the sales clerk's question about the phone,

the assistant sales manager "loudly responded, 'I will not serve him.' She then gave [the plaintiff] the finger, handed [the sales clerk] a brochure about the phone, and walked into her office." *Id.* at 520. The plaintiff "was offended—he thought [the assistant sales manager] treated him in this manner because of his race—so he promptly left the store." *Id.* However, the plaintiff returned to the store later that day to get the sales clerk's "name so [the plaintiff] could use him as a witness. [The sales clerk] provided [the plaintiff] with his name and then asked [the plaintiff] if he needed any further assistance in making a purchase. [The plaintiff] declined the offer." *Id.* The Seventh Circuit found that whether the plaintiff could prevail on his § 1981 claim "boil[ed] down to" the question of "whether [the defendant] refused to contract with [him] . . . , or [the plaintiff] opted not to contract with [the defendant] . . . ." *Id.* at 521. Considering the circumstances of that case, the Seventh Circuit held that the sales clerk would have served the plaintiff, but the plaintiff "cut off the exchange—and thus the opportunity to buy the phone—by leaving the store." *Id.*

That is not what happened here. There is no dispute that Rudat asked Blount to leave the store after directing Al-Marof to return her cup and that, when Blount asked Rudat what she should do with the acai in the cup, Rudat said that she should pour it out. (Doc. Nos. 122, 123-2.) This evidence, construed in the light most favorable to Blount, could support a reasonable jury finding that Whole Foods, not Blount, ended the transaction. Whole Foods therefore has not carried its initial burden to establish the absence of a genuine dispute of material fact that Blount can satisfy the second prong of a prima facie § 1981 claim by showing that she sought to make or enforce a contract for services ordinarily provided by Whole Foods.[3]

_____

[3] Whole Foods argues that Blount's "actions in not following the ordinary procedure that other customers follow with payment for acai arguably also was not the contract ordinarily provided by Whole Foods." (Doc. No. 121, PageID# 638.) It argues that, "when [Blount] deviated from the ordinary manner in which the self-serve machine is to be used [by dispensing acai into her own reusable cup instead of the disposable cup provided by Whole Foods], she ultimately lost

The third element of a prima facie § 1981 claim requires evidence that Blount was deprived of services while similarly situated persons outside of her protected class were not or that Blount received services in a markedly hostile manner that a reasonable person would find objectively discriminatory. *Christian*, 252 F.3d at 872.

Whole Foods first argues that there is no evidence in the record to support a finding that similarly situated persons outside of Blount's protected class were treated differently. (Doc. No. 121.) Considering the summary judgment record in this case, Whole Foods has satisfied its initial burden to show the absence of a genuine dispute of material fact that Blount was not treated differently than a similarly situated person outside of her protected class. Blount responds that "[s]imilarly situated non-Black customers (per [Blount's] observations) have consumed or held unpackaged food before checkout without incident . . . ." (Doc. No. 124, PageID# 717.) But the only record evidence Blount cites in support of this assertion is her statement in response to Whole Foods' twenty-fifth request for admission that she "ha[s] witnessed many customers eat food from the hot bar before paying for all of it. Things like salads or free-pour items." (Doc. No. 123-2, PageID# 688.) Even construed in the light most favorable to Blount, this general statement contains no information about the other customers' race. It therefore could not support a reasonable jury finding that Whole Foods treated Blount differently than a similarly situated person outside of her protected class.

Whole Foods next argues that Blount cannot establish that she was treated in a markedly hostile manner. (Doc. No. 121.) In determining whether a defendant's conduct was markedly hostile, courts in this circuit consider whether the conduct was: "'(1) so profoundly contrary to the

---

her Section 1981 claim, because the service she invented was not the service ordinarily provided by Whole Foods to other customers." (*Id.*) Whole Foods has not cited any authority to support this argument.

manifest financial interests of the merchant and/or [its] employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination.'" *Keck v. Graham Hotel Sys., Inc.*, 566 F.3d 634, 641 (6th Cir. 2009) (quoting *Christian*, 252 F.3d at 871).

Whole Foods argues that, because Al-Marof suspected Blount of shoplifting when he confronted her, Blount cannot establish that Whole Foods acted contrary to its financial interests, outside of widely accepted business norms, or so arbitrarily as to support a rational inference of discrimination. (Doc. No. 121.) Specifically, Whole Foods argues that "it was not unreasonable or discriminatory for [ ] Al-Marof to suspect [Blount] of shoplifting after she failed to pay for the acai in her cup initially at the weighing station and then wandered around the store with a cup of unpurchased product—especially a product that loses its luster as it starts to melt—for some unspecified period of time." (*Id.* at PageID# 644.) But the record contains conflicting evidence about Al-Marof's reasons for suspecting Blount.

Al-Marof's note states that Blount was an "African American female, approximately 25 years of age, known to engage in a recurring self-checkout scam with her family[.]"(Doc. No. 125-1, PageID# 739.) Blount posits that Al-Marof confused her with a different Black woman and Whole Foods agrees that Al-Marof mistook Blount for another person. (Doc. Nos. 130, 134.) Al-Marof's note also states that Blount "began wandering through the aisles while singing loudly" and "create[ed] a scene" by "alert[ing] a team member . . . and requesting [Al-Marof] . . . to inspect the women's public restroom due to an alleged presence of a 'naked woman running around.'" (Doc. No. 125-1, PageID# 739.) Blount denies any of this conduct (Doc. No. 123-2), and Whole Foods states that its employees do not recall anyone reporting the restroom incident (Doc. No. 123-3). Al-Marof's note further states that he "maintained close surveillance of [Blount] due to her

increasingly peculiar behavior" and that he did not approach Blount until a Whole Foods "team member advised [him] to approach her" about consuming her acai without paying for it. (Doc. No. 125-1, PageID# 739.) But Blount denies that Al-Marof asked her to pay for or even mentioned the acai when he approached her. (Doc. No. 123-2.) Blount states that Al-Marof "accused [her] of stealing the mug not the acai" and falsely "said that he saw [her] steal the cup off of the shelf." (*Id.* at PageID# 680, 681.) Whole Foods states that "Rudat was informed that [Blount] had not paid for her smoothie before consuming it, and she had gotten upset by her interaction with [ ] Al-[M]arof" and "was called to intervene in a potential shoplifting incident." (Doc. No. 123-3, PageID# 703.) But Whole Foods has not disputed Blount's assertion that Rudat had to direct Al-Marof to return the cup to Blount. And there is no dispute that Rudat asked Blount to leave the store and told her to pour out the acai.

Construing this evidence in the light most favorable to Blount, a reasonable jury could find that Al-Marof "falsely report[ed] [Blount] for shoplifting" because of her race and that Whole Foods "forced [her] to leave the store" instead of completing the transaction, conduct that, "if true, was markedly hostile because it was profoundly contrary to [Whole Foods'] financial interests and far outside of widely acceptable business norms." *Branscumb v. Horizon Bancorp, Inc.*, Case No. 1:23-cv-53, 2024 WL 1171244, at *5 (W.D. Mich. Mar. 19, 2024) (citing *Christian*, 252 F.3d at 875, 878, 879). Whole Foods therefore has not carried its initial summary judgment burden to show the absence of any genuine disputes of material fact that Blount can establish a prima facie case of discrimination under § 1981.

### b.    Articulating a Legitimate Non-Discriminatory Reason

Whole Foods asserts that its legitimate reason for asking Blount to leave the store was "the prevention of suspected shoplifting . . . ." (Doc. No. 121, PageID# 629; *see also id.* at PageID# 645 ("Whole Foods sought to prevent suspected shoplifting—a legitimate, nondiscriminatory

reason[.]").) Whole Foods points to record evidence that Rudat "was called to intervene in a potential shoplifting incident" and "was informed that [Blount] had not paid for her smoothie before consuming it, and she had gotten upset by her interaction with [ ] Al-[M]arof." (Doc. No. 123-3, PageID# 703.) Because Whole Foods' burden at this stage of the summary judgment analysis "is one of production, not persuasion," the Court "must accept [Whole Foods'] stated reason that it" asked Blount to leave "the store because of suspicion that [she] had attempted to shoplift." *Christian*, 252 F.3d at 879; *see also Johnson v. Kroger Co.*, Civ. Action No. 2:18-cv-1240, 2020 WL 4038998, at *10 (S.D. Ohio July 17, 2020) (finding defendants "met their burden" to articulate a legitimate non-discriminatory reason where defendants "assert[ed] that [they] suspected [p]laintiff of shoplifting" and "presented evidence demonstrating as much"). Whole Foods has met its burden to articulate a legitimate non-discriminatory reason for its conduct.

### c. Pretext

Because Whole Foods has produced evidence of an asserted non-discriminatory reason for its actions, the burden shifts back to Blount to "prove by a preponderance [of evidence] that [Whole Foods'] stated reason was not its true reason, but was a pretext for discrimination." *Christian*, 252 F.3d 879 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000)). To establish pretext, Blount must show that: "'1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to explain [Whole Foods'] action.'" *Id.* (quoting *Johnson*, 215 F.3d at 573). The Sixth Circuit has held that, "[i]n reaching the ultimate conclusion that the defendant intentionally discriminated, 'it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the [defendant's] explanation.'" *Id.* (quoting *Reeves*, 530 U.S. at 147). Specifically, as the Supreme Court explained in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993), "'[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is

accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.'" *Christian*, 252 F.3d at 879 (alteration in original) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 511).

There is no dispute that Blount filled her reusable cup with acai from the self-serve machine, did not weigh the acai or immediately pay for it, and walked around the store with the acai in her cup. In Blount's version of events, she did not eat any acai while walking around the store, intended to pay for the acai before leaving the store, and was waiting for her mother to make a usual transfer of money for breakfast to complete her purchase. But Al-Marof saw Blount, wrongly associated her with a Black family known for shoplifting, approached her and falsely stated that he saw her steal her cup, and took the cup from her. (Doc. Nos. 123-2, 125-1, 134.) In Whole Foods' version of events, Al-Marof approached Blount because he suspected her of shoplifting the acai, the cup, or both, and Rudat intervened because he was told that Blount had not paid for the acai before consuming it and had become upset by her interaction with Al-Marof. (Doc. Nos. 121, 122, 123-3, 133.) It is undisputed, for purposes of summary judgment, that Rudat intervened, directed Al-Marof to return the cup to Blount, asked Blount to leave the store to close the encounter with Al-Marof, and told Blount to pour out the acai. (Doc. Nos. 123-2, 132.)

At trial, a jury would weigh Blount's credibility and any evidence she chose to provide in support of her claim against the credibility of any witnesses called by Whole Foods and its supporting evidence and choose what evidence to believe. *See Christian*, 252 F.3d at 879. Courts deciding summary judgment motions "are not permitted to engage in such a weighing process." *Id.*; *see also Welch v. United Network for Organ Sharing*, 767 F. Supp. 3d 746, 768 (M.D. Tenn. 2025) (Crenshaw, J.) ("In deciding a motion for summary judgment, the Court . . . does not . . . weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter." (citing

*Anderson*, 477 U.S. at 249)). Construing the record evidence in Blount's favor—as it must be for purposes of Whole Foods' summary judgment motion—a reasonable jury could find that Al-Marof wrongly linked Blount to a known shoplifter because of her race and falsely accused her of stealing her own cup, that Rudat determined the cup belonged to Blount but still asked Blount to leave the store and pour out the acai she intended to purchase, and, accordingly, that Whole Foods' stated reason for the events had no basis in fact. *See Christian*, 252 F.3d at 879. A reasonable jury could then infer the ultimate fact of discrimination from the falsity of Whole Foods' explanation and the evidence supporting Blount's prima facie case. *See id.* Accordingly, Blount's § 1981 claim "must be submitted to the jury for final resolution." *Id.* at 880. Whole Foods' motion for summary judgment should be denied.

### 2.      Blount's Summary Judgment Motion

Whole Foods argues that the Court should deny Blount's summary judgment motion as untimely because Blount filed her motion two days after the Court's August 6, 2025 deadline. (Doc. No. 131.) Blount does not dispute that she filed her motion late. She argues, however, that, under Federal Rule of Civil Procedure 6, "a modest delay may be excused for 'excusable neglect.'" (Doc. No. 135, PageID# 971 (quoting Fed. R. Civ. P. 6(b)(1)(B)).) Rule 6(b)(1)(B) provides that, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The "legal standard for excusable-neglect determinations" requires courts to balance "five principal factors:"

> (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006).

Blount did not move to extend the summary judgment deadline and has not explained the reason for her delay, whether the delay was within her reasonable control, or whether she acted in good faith. Accordingly, there is no basis on which the Court can find that Blount "failed to act because of excusable neglect" as required by Rule 6(b)(1)(B) to extend the summary judgment motion deadline. The Court should therefore deny Blount's motion for summary judgment as untimely.

Further, even if the Court were to consider Blount's motion on the merits, the same genuine disputes of material fact regarding Blount's § 1981 claim that render summary judgment inappropriate for Whole Foods also prevent granting her motion for summary judgment.

### C.      Whole Foods' Motion to Strike

Because Blount's motion for summary judgment should be denied as untimely, Whole Foods' motion to strike Blount's second summary judgment reply (Doc. No. 154) should be denied as moot.

## IV.    Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Whole Foods' motion for summary judgment (Doc. No. 120) and Blount's motion for summary judgment (Doc. No. 125) be DENIED and that Whole Foods' motion to strike (Doc. No. 154) be DENIED AS MOOT.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 31st day of October, 2025.

ALISTAIR E. NEWBERN
United States Magistrate Judge