UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALIVIA BLOUNT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:23-cv-00343 |
| | ) |
| WHOLE FOODS MARKET | ) |
| DOWNTOWN NASHVILLE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Before the Court is the Magistrate Judge's Report and Recommendation ("R&R") (Doc. No. 155) recommending that the Court deny Defendant Whole Foods Market Downtown Nashville's ("Whole Foods") Motion for Summary Judgment (Doc. No. 120), Plaintiff Alivia Blount's ("Blount") Motion for Summary Judgment (Doc. No. 125), and Whole Foods's Motion to Strike (Doc. No. 154). Both Blount and Whole Foods have filed objections to the Magistrate Judge's R&R. (Doc. Nos. 156, 172). For the following reasons, the Court rules as follows: Whole Foods's objections (Doc. No. 172) will be sustained in part and overruled as moot in part; Blount's objections (Doc. No. 156) will be overruled as moot; and the R&R (Doc. No. 155) will not be accepted.

### I. BACKGROUND[1]

Blount initiated this 42 U.S.C. § 1981 ("§ 1981" or "Section 1981") action against Whole Foods on April 13, 2023, alleging that Whole Foods discriminated against her based on her race when it denied her the opportunity to purchase self-serve acai in a manner that a reasonable person

---

[1] The R&R provides ample factual and procedural background on the parties' pending motions. (See Doc. No. 155 at 2–5). Accordingly, the Court will only detail the issues relevant to the resolution of the parties' objections here.

could find discriminatory. (See Doc. Nos. 1, 11, 13). It is on this claim that both parties seek summary judgment in their favor. (Doc. Nos. 120, 125).

In short, the undisputed facts are as follows:[2] Blount, an African American woman, entered Whole Foods on March 13, 2023. (Doc. No. 134 ¶ 2). She filled a cup that she brought in with her to the store with acai from Whole Foods's self-serve acai machine. (Id. ¶ 6). Whole Foods's self-serve acai is ordinarily used by filling a Whole Foods disposable cup, pricing that cup by weight for purchase, and immediately thereafter paying for the acai. (Doc. No. 133-4 ¶¶ 4–5; Doc. No. 134 ¶¶ 4–6).

After filling her personal cup with acai, Blount walked around the store while she waited for her parents to send her money to purchase the acai. (Doc. No. 123-2; Doc. No. 133-2 ¶¶ 1, 3, 32). While walking through the Whole Foods aisles, Whole Foods Security Guard Abdullah Al-Marof ("Al-Marof") approached Blount. (Doc. Nos. 123-2, 123-3; Doc. No. 133-2 ¶¶ 1–2, 12–13; Doc. No. 133-3 ¶¶ 9, 15). A conflict between the two ensued: Al-Marof suspected Blount was shoplifting her acai, took her cup from her, and alerted Whole Foods Store Manager Joe Rudat ("Rudat") of the suspected theft. (Doc. No. 133-2 ¶ 23; Doc. No. 133-3 ¶¶ 9, 13; Doc. No. 134 ¶¶ 9–12). Rudat then approached Blount and Al-Marof, instructed Al-Marof to return Blount's personal cup to her, and asked Blount to pour out the acai from her cup and leave the store. (Doc. No. 123-2; Doc. No. 133-2 ¶¶ 12, 15, 19; Doc. No. 134 ¶¶ 13–17). Blount did so, taking her

---

[2] The undisputed facts in this section are drawn from the undisputed portions of the responses to the statement of facts (Doc. Nos. 132, 134), the exhibits and depositions submitted in connection with the summary judgment briefing, and portions of the Amended Complaint (Doc. No. 13) that are not contradicted by the evidence in the record. To the extent that a party failed to dispute a proposed statement of undisputed material fact with a proper citation to the record, the Court considers that fact undisputed. See Fed. R. Civ. P. 56(c); see also M.D. Tenn. L.R. 56.01(e).

2

personal cup with her. (Doc. No. 133-2 ¶ 15). According to Blount, following this interaction, Al-Marof wrote the following note ("Note") in his cell phone:

> March 13 –
>
> African American female, approximately 25 years of age, known to engage in a recurring self-checkout scam with her family, visited the store unaccompanied and began wandering through the aisles while singing loudly. Subsequently, she alerted a team member, creating a scene and requesting the security officer (myself) to inspect the women's public restroom due to an alleged presence of a "naked woman running around." Upon inspection, the restroom was found to be unoccupied, and statements from witnesses did not support the claim of a naked woman.
>
> I maintained close surveillance of the woman due to her increasingly peculiar behavior. She continued singing loudly and making customers uncomfortable. Notably, she used the Smoothie machine to fill her personal cup, took it to the cafe without payment, and consumed the smoothie for approximately 15 minutes. A team member advised me to approach her, as the smoothies are sold by weight, and she had not paid before consumption.
>
> I confronted the individual and informed her that she needed to weigh the smoothie at the register and make payment before consumption. In response, she began to shout, accused me of racism, and ridiculed my appearance. Her continued outbursts caused significant discomfort to other customers. After several minutes of attempting to defuse the situation, I informed her that she would have to leave the store unless she calmed down. She requested a manager, and I radioed for Joe to intervene. Joe successfully diffused the situation, and the woman retrieved her cup from the cafe before exiting the store.

(Doc. No. 125-1 at 17).

After considering these undisputed facts and the remainder of the evidence in the record, the Magistrate Judge issued the October 31, 2025 R&R. (Doc. No. 155). In the R&R, the Magistrate Judge recommends: (1) denying Whole Foods's Motion for Summary Judgment (Doc. No. 120) because disputes of fact exist on Blount's § 1981 race discrimination claim; (2) denying Blount's Motion for Summary Judgment (Doc. No. 125) as untimely; and (3) denying Whole Food's Motion to Strike (Doc. No. 154) as moot. (Doc. No. 155 at 24).

3

## II.     STANDARD OF REVIEW

Both parties raise objections to the R&R.  Before addressing the parties' objections to the R&R, it is worth emphasizing that the Federal Rules of Civil Procedure and this Court's Local Rules provide that only "specific written objections" to the magistrate judge's proposed factual findings and legal conclusions are considered "proper" for the district court's consideration.  Fed. R. Civ. P. 72(b)(2).  Proper objections also "must state with particularity the specific portions of the Magistrate Judge's report or proposed findings or recommendations to which an objection is made . . . to apprise the District Judge of the bases for the objections."  M.D. Tenn. L.R. 72.02(a). "The district judge must determine de novo any part of the magistrate judge's disposition [on a dispositive motion] that has been *properly* objected to."  Fed. R. Civ. P. 72(b)(2) (emphasis added). In doing so, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Id.; see also 28 U.S.C. § 636(b)(1)(C).

The rules distinguish between proper objections that deserve de novo review, and "vague, general, or conclusory objections," which do "not meet the requirement of specific objections and [are] tantamount to a complete failure to object."  Cole v. Yukins, 7 F. App'x 354, 356 (6th Cir. 2001) (citing Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995)).  Indeed, "an 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."  VanDriver v. Martin, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004) (citations and quotations omitted).  Further, arguments raised for the first time to the district court on objection are not normally properly before the district court for consideration, as arguments are usually waived when not first presented to the magistrate judge.  See Murr v. United States, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (party procedurally barred from raising claim not raised before the

4

magistrate judge); The Glidden Co. v. Kinsella, 386 F. App'x. 535, 544 (6th Cir. 2010) (declining to review an issue that the district judge did not consider because it was not presented to the magistrate judge).

Whether objections are properly raised is of great import, as an improper objection amounts to a "failure to properly, specifically, and timely object to a report and recommendation," which "releases the Court from its duty to independently review the matter." Lawhorn v. Buy Buy Baby, Inc., 2021 WL 1063075, at *1 (M.D. Tenn. Mar. 19, 2021). When a litigant makes improper objections, "[t]he district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate [judge] useless." Howard v. Sec'y of Health and Human Servs., 932 F.2d 505, 509 (6th Cir. 1991). Under these circumstances, "[t]he functions of the district court are effectively duplicated as both the magistrate [judge] and the district court perform identical tasks," and "[t]his duplication of time and effort wastes judicial resources rather than sav[es] them, and runs contrary to the purposes of the Magistrates Act." Id. With these standards in mind, the Court now turns to whether the parties' objections are proper or meritorious.

### III. DISCUSSION

The Court need only address Whole Foods's objections, as they are dispositive. Whole Foods contends the Magistrate Judge erred in denying its motion for summary judgment in five ways: (1) improperly shifting the burden of demonstrating admissibility of the Note onto Whole Foods; (2) failing to analyze properly Blount's proof on the second *prima facie* factor; (3) making an improper inference of racial animus not supported by relevant authority; (4) failing to apply the entire "markedly hostile" test in its analysis; and (5) misapplying the pretext framework. (See generally Doc. No. 173). The Court will only address Whole Foods's second objection, as it controls.

A. <u>Legal Standard</u>

Whole Foods's second objection to the R&R's analysis of Blount's *prima facie* case of racial discrimination is proper, because it is specific and includes citations to the record that alerts the Court on what Whole Foods contends is the legal error in the R&R. M.D. Tenn. L.R. 72.02(a) (a valid objection must "state with particularity the specific portions of the Magistrate Judge's report . . . and must be accompanied by sufficient documentation"). Accordingly, the Court reviews that issue de novo. Fed. R. Civ. P. 72(b)(2). In doing so, it applies the same summary judgment standard that the Magistrate Judge did in the R&R. (Doc. No. 155 at 7–8).

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Peffer v. Stephens</u>, 880 F.3d 256, 262 (6th Cir. 2018) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." <u>Rodgers v. Banks</u>, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted). "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." <u>Id.</u> (citation and quotations omitted). "In response, the nonmoving party must present 'significant probative evidence' that will reveal that there is more than 'some metaphysical doubt as to the material facts.'" <u>Miller v. Maddox</u>, 866 F.3d 386, 389 (6th Cir. 2017) (quoting <u>Moore v. Philip Morris Cos., Inc.</u>, 8 F.3d 335, 340 (6th Cir. 1993)).

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. <u>Matsushita Elec.</u>

6

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. See Anderson, 477 U.S. at 249. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. See Rodgers, 344 F.3d at 595.

B. Analysis

The Court turns to the merits of Whole Foods's second objection on Blount's § 1981 race discrimination claim. (See Doc. No. 173 at 9–14). "Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts with both public and private actors." Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 867–68 (6th Cir. 2001). To establish a § 1981 race discrimination claim relying on circumstantial evidence, as Blount does here, "a plaintiff must meet the burden-shifting standard of proof for Title VII cases established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Gray v. AutoZoners, LLC, 2022 WL 16942609, at *4 (6th Cir. Nov. 15, 2022) (citing Christian, 252 F.3d at 868). McDonnell Doulgas "requires a plaintiff to 'first establish a *prima facie* case of discrimination.'" Id. (quoting Christian, 252 F.3d at 868). If Blount can do so, "the burden then shifts to [Whole Foods] to produce a legitimate, non-discriminatory reason for the adverse treatment." Id. (citing Christian, 252 F.3d at 868). If Whole Foods does so, Blount "must establish that the nondiscriminatory reason proffered by [Whole Foods] is a pretext for discrimination." Id. (citing Christian, 252 F.3d at 868).

As the Magistrate Judge accurately explained in the R&R, because Blount's § 1981 claim arises in the commercial establishment context, she must show the following to establish a *prima facie* case of race discrimination: (1) she is a member of a protected class; (2) she "sought to make or enforce a contract for services ordinarily provided" by Whole Foods; and (3) she was "denied

7

the right to enter into or enjoy the benefits or privileges of the contractual relationship[,]" in that she was either "deprived of services while similarly situated persons outside the protected class were not and/or" she "received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory." Christian, 252 F.3d at 872. Whole Foods's objection challenges whether Blount satisfied the second element of this test.[3] (See Doc. No. 173 at 9–14).

In the R&R, the Magistrate Judge recommends the Court find a genuine dispute of material fact on the second element of Blount's *prima facie* case, because there is evidence that Blount had the means to purchase the acai before leaving Whole Foods such that she was ready to enter a contract with Whole Foods for that purchase. (Doc. No. 155 at 14–15). Whole Foods objects to this analysis, reasoning that the Magistrate Judge's emphasis on whether Blount had the means to purchase acai ignores binding Sixth Circuit authority that requires more. (Doc. No. 173 at 9). According to Whole Foods, to establish the second element of her *prima facie* case, Blount must show both that she had the means to complete the transaction and that she made herself "available to receive and pay for services ordinarily provided by the defendant to all members of the public in the manner in which they are ordinarily provided." Christian, 252 F.3d at 871. Whole Foods argues that because it is undisputed that Blount did not make herself available to receive and pay for the acai in the manner ordinarily provided by Whole Foods—a fact that the R&R does not adequately address—Blount cannot establish this element. (Doc. No. 173 at 9–14). Blount argues in response, without citation to any evidence in support, that she followed ordinary procedure for

---

[3] Given that the Whole Foods's objection on the second *prima facie* element of Blount's § 1981 claim is controlling, the Court need not grapple with the other McDonnell Douglas factors relevant to Blount's claim to conclude that summary judgment is warranted in Whole Foods's favor.

purchasing the acai because it was to be purchased at the front of the store, and Whole Foods security and employees did not permit her to go there to purchase her item. (Doc. No. 174).

Upon review of the record and the legal authority, the Court finds Whole Foods's objection meritorious. As a threshold matter, neither the Court, nor Whole Foods, take issue with the Magistrate Judge's analysis on whether Blount had the means to purchase the acai. (See Doc. No. 155 at 14–15). If that analysis alone controlled the second element of Blount's *prima facie* case, the Magistrate Judge would be correct in her conclusion. However, the second element analysis is not so simple.

In Christian, the Sixth Circuit explained what is required to satisfy the second element of the *prima facie* case for a commercial establishment discrimination claim. Christian, 252 F.3d at 872. There, the Sixth Circuit adopted the articulation of the second element as described in Callwood v. Dave & Buster's, Inc., 98 F. Supp. 2d 694, 707 (D. Md. 2000). Id. Specifically, the Callwood test requires a plaintiff like Blount to show that "'she made herself available to receive and pay for services ordinarily provided by the defendant to all members of the public in the manner in which they are ordinarily provided[.]'" Id. at 871 (quoting Callwood, 98 F. Supp. 2d at 707). Applying that description to the second element of the *prima facie* case, the Christian court determined the plaintiff in that case easily satisfied the second element because she "made herself available to enter into a contractual relationship for services ordinarily provided by [the defendant]." Id. at 874. Specifically, she "had selected merchandise to purchase, had the means to complete the transaction, and would, in fact, have completed the transaction, and would, in fact, have completed her purchase had she not been asked to leave the store." Id.; see also Gray, 2022 WL 16942609, at *4 (6th Cir. Nov. 15, 2022) (applying Christian and Callwood standard to § 1981

commercial establishment claim); Briscoe v. Jackson, 285 F. App'x 205, 208 (6th Cir. 2008) (same).

Applying the test in Callwood and Christian here, the undisputed record evidence shows that Blount did not make herself available to receive and pay for services ordinarily provided by Whole Foods. Blount deviated from the manner in which Whole Foods ordinarily offers customers the ability to serve and pay for acai. The record reflects that Whole Foods's self-serve acai machine is to be used by: (1) filling a Whole Foods disposable cup with acai; (2) weighing the cup with the acai at that service station; and (3) immediately paying for the acai before leaving the self-serve area. (Doc. No. 133-4 ¶¶ 4–5; Doc. No. 134 ¶¶ 5–6, 14). Instead of following that service ordinarily provided for by Whole Foods, the parties agree that Blount: (1) filled her own personal cup with acai; (2) did not weigh the cup with the acai; and (3) did not purchase the acai in the self-serve area before walking around other aisles with the filled cup. (Doc. No. 133-2 ¶¶ 1, 3, 32; Doc. No. 134 ¶¶ 5–6, 14). In doing so, Blount all but admits she attempted to engage in a service that Whole Foods does not ordinarily provide its customers, see Christian, 252 F.3d at 871, 874, dooming her claim.

Blount's argument to the contrary, that acai is purchased at the front checkout counters, is unsupported by the record and her own previous representations. (See, e.g., Doc. No. 134 ¶¶ 3–5 (in response to Whole Food's statement of undisputed material facts about acai self-serve procedures, stating "[s]tores frequently accommodate customers who deviate from standard procedure")). In any event, this argument carries little weight considering Blount's own admissions that she: (1) brought her own cup to Whole Foods to fill with acai (Doc. No. 134 ¶ 6 (Blount not disputing that she brought her own cup to Whole Foods); and (2) either did not intend to, or could not have, purchased the acai immediately after distributing it (at the counter or

10

otherwise). (Doc. No. 13 at 1 (allegations stating that Blount "was waiting for my mother to send me money for breakfast via cash app to pay for the acai"); Doc. No. 123-2 ¶ 2 (Blount stating that she "did have money [at the time I poured the acai] but not the funds [she] intended to use for breakfast")). Because the record demonstrates that Blount did not seek to use the acai service in a manner ordinarily provided by Whole Foods when she did not use a disposable Whole Foods cup or pay for the acai before leaving the self-serve acai area, she cannot satisfy the second element of her *prima facie* case.[4] See Christian, 252 F.3d at 871, 874; cf. Morris v. Office Max, 89 F.3d 411, 414–15 (7th Cir. 1996) (no valid contract interest where plaintiffs did not "allege the actual loss of a contract interest," rather than "merely the possible loss of future contract opportunities").

The Magistrate Judge's ruling on this portion of the analysis of the second element of Blount's *prima facie* case is understandable, given Whole Foods's argument on this point at summary judgment failed to clearly indicate it invoked Christian and Callwood as controlling legal authority. (See Doc. No. 155 at 17 n.3 (R&R dismissing Whole Foods's argument on this point, given its conclusion that Whole Foods "ha[d] not cited any authority to support this argument")); but see Doc. No. 121 at 8–10 (Whole Foods discussing Christian's and Callwood's applicability earlier in its second element analysis)). The problems with Whole Foods's opening briefing aside, however, Whole Foods ultimately did raise the argument it relies upon now in the first instance in connection with a broader discussion of Blount's inability to satisfy the Christian/Callwood standard. (See Doc. No. 121 at 8–10 (citing evidence regarding ordinary procedures for distributing and purchasing acai), 11 (arguing Blount's "actions in now following the ordinary procedure that other customers follow with payment for acai" was not the contract ordinarily

---

[4] Because the undisputed facts demonstrate that Whole Foods requires customers to pay for acai prior to leaving the dispensary area (Doc. No. 134 ¶¶ 4–6), Blount's evidence that she later asked how to pay for it after getting into an altercation with Al-Marof and Rudat matters little.

11

provided because "the expectation was that a customer would use one of Whole Foods' provided disposable cups, dispense the product, immediately weigh it, and then pay for it prior to leaving the area")). Tellingly, Blount failed to respond to Whole Foods's argument on this issue in its briefing. (Doc. No. 124 at 2). Accordingly, Whole Foods's unchallenged analysis invoking Christian and Callwood, and a full reading of that authority, must be resolved. When doing so, a different conclusion than the one the Magistrate Judge reaches in the R&R is warranted.

Given the foregoing, and viewing the record in Blount's favor, the undisputed evidence shows that Blount failed to distribute and purchase her acai in a manner ordinarily provided for by Whole Foods. Because of this, Blount cannot establish the second element of her § 1981 claim. Accordingly, Whole Foods's first objection is well-taken, and the Court will not approve the R&R and will grant summary judgment in Whole Foods's favor.[5]

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

---

[5] Among others, Whole Foods objects to the R&R on the basis that the Magistrate Judge improperly analyzed the third *prima facie* factor because she failed to consider all of the Keck v. Graham Hotel Sys., Inc. factors that inform whether a defendant acted in a "markedly hostile" manner. 566 F.3d 634, 641 (6th Cir. 2009); (see Doc. No. 173 at 16–17). While Whole Foods's objection appears to have at least some merit, the Court need not address this issue in full given that it has successfully demonstrated Blount cannot establish the second element of her *prima facie* case.